**KOYO SEIKO CO., LTD. and Koyo Corporation of U.S.A., Plaintiffs,**

v.

**The UNITED STATES and the United States Department of Commerce, Defendants,**

**The Timken Company, Defendant–Intervenor.**

**Slip Op. 98–58.
Court No. 97–04–00580.**

United States Court of International Trade.

May 4, 1998.

Powell, Goldstein, Frazer & Murphy LLP (Peter O. Suchman, Neil R. Ellis, Elizabeth C. Hafner and Ronald E. Minsk) for Plaintiff.

Frank W. Hunger, Asst. Atty. General; David M. Cohen, Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Lucius B. Lau); of counsel: Carlos A. Garcia, Attorney–Advisor, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, for Defendant.

Stewart and Stewart (Terence P. Stewart, William A. Fennell and Patrick J. McDonough) for Defendant–Intervenor.

## OPINION

TSOUCALAS, Senior Judge.

Plaintiffs, Koyo Seiko Co., Ltd. and Koyo Corporation of U.S.A. (collectively "Koyo"), move for judgment on the agency record pursuant to Rule 56.2 of the Rules of this Court. Koyo challenges the Department of Commerce, International Trade Administra-tion's ("Commerce") final results of the administrative review, entitled *Tapered Roller Bearings and Parts Thereof, Finished and Unfinished, From Japan, and Tapered Roller Bearings, Four Inches or Less in Outside Diameter, and Components Thereof, From Japan; Final Results of Antidumping Duty Administrative Reviews and Termination in Part* ("*Final Results*"), 62 Fed.Reg. 11,825 (Mar. 13, 1997).

### Background

The administrative review at issue encompasses imports of tapered roller bearings ("TRBs") during the review period of October 1, 1994 through September 30, 1995. On November 6, 1996, Commerce published the preliminary results of the instant review. *See Tapered Roller Bearings and Parts Thereof, Finished and Unfinished, From Japan, and Tapered Roller Bearings, Four Inches or Less in Outside Diameter, and Components Thereof, From Japan; Preliminary Results of Antidumping Duty Administrative Reviews and Partial Termination of Administrative Reviews* ("*Preliminary Results*"), 61 Fed.Reg. 57,391. On March 13, 1997, Commerce published the Final Results at issue. *See* 62 Fed.Reg. at 11,825. Koyo appeals certain Final Results determinations dealing with its sales subject to the antidumping duty order on TRBs four inches or less in outside diameter.

Koyo claims Commerce erred in the Final Results by: (1) denying Koyo a level of trade adjustment ("LOT adjustment"); (2) failing to deduct discounts and/or rebates from gross unit price in calculating home market revenue for constructed export price ("CEP") profit in the computer program; (3) double-counting profit for tapered roller bearing ("TRB") cups and cones split from TRB sets in the calculation of profit for constructed value ("CV") in the computer program; and (4) failing to adjust home market price for pre-sale inland freight to certain aftermarket customers in the computer program.

### Discussion

The Court has jurisdiction over this matter under 19 U.S.C. § 1516a(a)(2) (1994) and 28 U.S.C. § 1581(c) (1994).

■ The Court must uphold Commerce's final determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 477, 71 S.Ct. 456, 95 L.Ed. 456 (1951) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). "It is not within the Court's domain either to weigh the adequate quality or quantity of the evidence for sufficiency or to reject a finding on grounds of a differing interpretation of the record." *Timken Co. v. United States,* 12 CIT 955, 962, 699 F.Supp. 300, 306 (1988), *aff'd,* 894 F.2d 385 (Fed.Cir.1990).

### 1. *Level of Trade Adjustment*

Because the administrative review at issue was initiated after January 1, 1995, the applicable statutory provisions are the amendments made by the Uruguay Round Agreements Act ("URAA"), Pub.L. 103–465, 108 Stat. 4809. Under pre-URAA law, there were no specific provisions concerning adjustments for differences in levels of trade. However, Commerce promulgated regulations stating that it normally would calculate foreign market value and U.S. price at the same commercial level of trade. *See* 19 C.F.R. § 353.58 (1994). If such sales were insufficient to permit an adequate comparison, Commerce would calculate foreign market value based upon such or similar sales at the most comparable level of trade in the U.S. market, making appropriate adjustments for differences affecting price comparability. *See id.*

The antidumping law, as amended by the URAA, contains specific provisions regarding adjustments for differences in levels of trade. The statute defines normal value ("NV") (which corresponds to pre-URAA law's "foreign market value") as "the price at which the foreign like product is first sold (or, in the absence of a sale, offered for sale) for consumption in the exporting country, in the usual commercial quantities and in the ordinary course of trade and, to the extent practicable, at the same level of trade as the export price or constructed export price...." 19 U.S.C. § 1677b(a)(1)(B)(i) (1994). The statute directs Commerce to make a LOT adjustment to NV under certain conditions:

> The price described in paragraph (1)(B) shall also be increased or decreased to make due allowance for any difference (or lack thereof) between the export price and constructed export price and the price described in paragraph (1)(B) (other than a difference for which allowance is otherwise made under this section) that is shown to be wholly or partly due to a difference in level of trade between the export price or constructed export price and normal value, if the difference in level of trade—
>
> > (i) involves the performance of different selling activities; and
> >
> > (ii) is demonstrated to affect price comparability, based on a pattern of consistent price differences between sales at different levels of trade in the country in which normal value is determined.

19 U.S.C. § 1677b(a)(7)(A). In sum, to qualify for a LOT adjustment, a party must demonstrate that the difference in level of trade: (1) involves the performance of different selling activities; and (2) affects price comparability, as evidenced by a consistent pattern of price differences.

When the data available does not provide an appropriate basis to grant a LOT adjustment, but NV is established at a level of trade constituting a more advanced stage of distribution than the level of trade of the CEP, the statute ensures a fair comparison by providing for a "CEP offset." *See* 19 U.S.C. § 1677b(a)(7)(B).

■ During the administrative review in this case, Koyo established the first criterion for eligibility for a LOT adjustment, demonstrating that its CEP sales were sold at a different level of trade than the sales used by Commerce to establish NV. *See Final Results,* 62 Fed.Reg. at 11,842. However, while Koyo did not demonstrate the existence of a home market level of trade equivalent to its U.S. trade level, Koyo calculated a "constructed" NV, which it claimed was at a level

of trade equivalent to the U.S. level of trade and could be used to measure the appropriate LOT adjustment.[1] Commerce rejected Koyo's constructed normal value and refused to grant Koyo's request for a LOT adjustment, claiming Koyo failed to provide adequate actual data to satisfy the second criterion. *See id.* Commerce, nevertheless, granted Koyo a CEP offset.

Koyo contends that Commerce's decision to deny it's requested LOT adjustment was erroneous because Commerce improperly based its decision on its interpretation of the URAA level of trade statutory provision in a manner that effectively failed to implement critical aspects of the law. Koyo's Mem. Supp. Mot. J. Agency R. at 8–27. In particular, Koyo argues that the "pattern of consistent price differences" set forth in the second requirement may be established by " 'constructed' home market analogs to the adjusted CEP, by deducting from the home market gross sales price the same expenses as those deducted from the U.S. sales price in calculating the 'adjusted CEP.' " *Id.* at 15.

Commerce responds that Koyo lacked home market sales at a level of trade equal to Koyo's CEP sales, without which Commerce could not determine whether differences in the levels of trade affected price comparability. Commerce maintains that its interpretation of the URAA statutory language requiring parties to use actual sales to demonstrate their entitlement to a LOT adjustment, is reasonable. Def.'s Partial Opp'n to Mot. J. Agency R. at 11–21.

Timken agrees generally with the position taken by Commerce, emphasizing that Koyo's invention of "constructed normal value" provides for no basis for comparison. Timken's Partial Opp'n to Mot. J. Agency R. at 7–11.

The issue before the Court is whether Commerce should base LOT adjustments on a constructed home market level of trade

purporting to demonstrate a "pattern of consistent price differences" under the relevant URAA provisions. In the Final Results, Commerce stated its reasoning as follows:

> We may not base LOT determinations or adjustments upon "constructed" or artificial home market levels. Koyo's constructed normal value LOTs are not LOTs at which Koyo actually sold TRBs in the home market during the POR.... [T]here is no statutory basis for us to construct LOTs in the home market or elsewhere. Therefore, because Koyo was unable to demonstrate a pattern of consistent price differences between a home market equivalent to its CEP and other home market LOTs, we did not have the information necessary to make a LOT adjustment.

62 Fed.Reg. at 11,842.

The Court finds this explanation, and Commerce's resultant LOT adjustment denial, reasonable. First, there is no support in the statute or elsewhere requiring, or suggesting, that Commerce accept a "constructed" normal value in establishing entitlement to a LOT adjustment. Rather, it is apparent from the statutory language that a LOT adjustment is based on consistent price differences between actual, and not constructed or otherwise artificial, sales. *See* 19 U.S.C. § 1677b(a)(7)(A)(ii) (requiring that the LOT adjustment be based on "consistent price differences between *sales* at different levels of trade") (emphasis added). Koyo admits that it "had no sales in the home market at a level of trade comparable to the CEP" during the period of review. *Koyo's Section A Questionnaire Response,* P.R. Doc. No. 77, at 8 (May 28, 1996). Further, the statute provides the CEP offset as an alternative for situations where CEP level of trade is less advanced than home market level of trade but a LOT adjustment is inappropriate.

---

1. Koyo computed this constructed NV by attempting to deduct from home market gross sales price the same expenses that are deducted from the U.S. sales price in calculating "adjusted CEP." To accomplish this, Koyo first calculated NV by adjusting the gross unit price for the expenses specified in the statute as NV adjustments (*see* subsection 1677b(a)(6)): inland

freight from the warehouse to the customer, home market packing, credit and circumstances of the sale adjustments. Koyo then subtracted from NV the following additional expenses: pre-sale inland freight, inventory carrying costs and indirect selling expenses. Finally, Koyo added a value named Billing Adjustment 1.

Commerce granted Koyo a CEP adjustment in this case.[2]

■ Koyo insists that Commerce's interpretation eviscerates the level of trade provision, noting that Commerce has denied LOT adjustments with almost perfect consistency in hundreds of postURAA law determinations. Koyo's Mem. Supp. Mot. J. Agency R. at 24–27. Koyo emphasizes that Commerce's failure to find a home market level of trade equivalent to that of U.S. sales in CEP cases is because CEP sales are adjusted for selling and moving expenses, unrealistically requiring a corresponding home market sale to be essentially a factory-door transaction. *Id.* at 26. The Court agrees that it is exceptionally difficult to obtain a LOT adjustment under Commerce's CEP level of trade methodology. Nevertheless, this Court's duty is to review the reasonableness of Commerce's statutory interpretation. *See IPSCO, Inc. v. United States,* 965 F.2d 1056, 1061 (Fed.Cir.1992) (quoting *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). Commerce's interpretation requiring actual sales to demonstrate the second criterion for a LOT adjustment is reasonable, in light of the existence of the CEP offset to cover situations such as those at issue. Consequently, Commerce's decision to deny Koyo a LOT adjustment is supported by substantial evidence.[3]

## 2. *Clerical Errors*

Koyo claims it has identified three clerical errors in the dumping margin computer program and requests a remand for their correc-

tion. Specifically, Koyo claims Commerce's computer program failed to deduct discounts and/or rebates from gross unit price in calculating home market revenue for CEP profit; double-counted profit for TRB cups and cones split from TRB sets in calculating profit for CV; and failed to deduct pre-sale inland freight from home market sales to certain aftermarket customers for which the deduction should have been made. Koyo's Mem. Supp. Mot. J. Agency R. at 27–31.

Commerce agrees that its computer program contained the three clerical errors Koyo identified and consents to a remand to correct them. Def.'s Partial Opp'n to Mot. J. Agency R. at 21–24.

Upon review of the record, the Court concludes that the computer program indeed contained the clerical errors Koyo identified. The Court, therefore, remands to Commerce to: deduct discounts and/or rebates from gross unit price in calculating home market revenue for CEP profit; recalculate profit for CV without double-counting profit for TRB cups and cones split from TRB sets; and deduct pre-sale inland freight from home market sales to certain aftermarket customers for which the deduction should have been made.

## *Conclusion*

In accordance with the foregoing opinion, this case is remanded to Commerce to correct certain clerical errors. Commerce is ordered to: (1) deduct discounts and/or rebates from gross unit price in calculating home market revenue for CEP profit; (2)

---

**2.** Commerce claims that its decision to require parties to use actual sales to demonstrate entitlement to a LOT adjustment comports with Congress' intent that "[n]o pretended sale or offer for sale, and no sale or offer for sale intended to establish a fictitious market, shall be taken into account in determining normal value." Def.'s Partial Opp'n to Mot. J. Agency R. at 17 (citing 19 U.S.C. § 1677b(a)(2)). The Court agrees, but notes that although Koyo ultimately computed a "constructed" home market level of trade, it did not employ pretended or fictitious sales to do so.

**3.** The Court is troubled by Koyo's outright misrepresentation of the *Uruguay Round Agreements Act, Statement of Administrative Action ("SAA"),*

H.R. Doc. No. 316, 103d Cong., 2d Sess. (1994). Koyo claims the section directs that " 'when sales in the U.S. and foreign markets cannot be compared at the same level of trade, [the Department *shall make*] an adjustment to normal value.' " Koyo's Mem. Supp. Mot. J. Agency R. at 10 (citing *SAA,* at 159) (emphasis added). In reality, the *SAA* states that "when sales in the U.S. and foreign markets cannot be compared at the same level of trade, an adjustment *may be* appropriate." *SAA,* at 159 (emphasis added). The *SAA* continues that Commerce "shall" adjust NV for price differences "demonstrated to be attributable to differences in the level of trade of the comparison sales in each market," but *only* if the two statutory requirements of subsections 1677b(a)(7)(A)(i) & (ii) are satisfied. *Id.*

recalculate profit for CV without double-counting profit for TRB cups and cones split from TRB sets; and (3) deduct pre-sale inland freight from home market sales to certain aftermarket customers for which the deduction should have been made. Commerce is sustained as to all other issues.

## ORDER

This case having been duly submitted for a decision and the Court, after due deliberation, having rendered a decision herein; now, in accordance with said decision, it is hereby

**ORDERED** that this case is remanded to the Department of Commerce, International Trade Administration ("Commerce"), to deduct discounts and/or rebates from gross unit price in calculating home market revenue for constructed export price profit; and it is further

**ORDERED** that Commerce is to recalculate profit for constructed value without double-counting profit for TRB cups and cones split from TRB sets; and it is further

**ORDERED** that Commerce is to deduct pre-sale inland freight from home market sales to certain aftermarket customers for which the deduction should have been made; and it is further

**ORDERED** that Commerce is sustained as to all other issues; and it is further

**ORDERED** that the remand results are due within ninety (90) days of the date that this opinion is entered. Any comments or responses by the parties to the remand results are due within thirty (30) days thereafter. Any rebuttal comments are due within fifteen (15) days of the date that the responses or comments are due.